UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FRANCIS JOSEPH SANTAROSE and | § | |
| ANGELA STANTAROSE | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-720 |
| | § | |
| AURORA BANK FSB, | § | |
|     Defendant. | § | |

## **MEMORANDUM AND ORDER**

Pending before the Court are Plaintiffs Francis and Angela Santarose's Motion for a Temporary Restraining Order [Doc. # 5] ("Motion").[1] Defendant Aurora Bank FSB ("Aurora") filed a Response [Doc. # 8], and Plaintiffs filed a Reply [Doc. # 10].[2]

---

[1] Both Plaintiffs proceed *pro se*. This action, and the instant Motion, were originally filed by Plaintiff Frank Santarose only. *See* Complaint for Injunctive and Declaratory Relief [Doc. # 1]. Subsequently, however, Frank and Angela Santarose, husband and wife, filed an Amended Complaint [Doc. # 15] adding Angela Santarose as a Plaintiff. Considering the circumstances of the case, the Court construes the Motion to be brought by both Plaintiffs.

[2] The Court has held two hearings in this case on April 14, 2010, and May 14, 2010, respectively. At both hearings, the Court administered an oath to Frank Santarose and accepted his arguments as sworn testimony. The parties have also filed additional briefing in this case. Plaintiffs filed an Amended Complaint [Doc. # 15] with attachments [Docs. # 13, # 14] and a Motion for Summary Judgment [Doc. # 21]. Defendant filed a Motion for Summary Judgment [Doc. # 21] ("Aurora's Motion") with exhibits. The Court ordered the exhibits to Aurora's Motion included in the record for the purposes of this Motion. To the extent relevant, the Court has considered all of the parties briefing' and arguments in deciding Plaintiffs' Motion for preliminary relief.

The Court construes the Motion also as a request for a preliminary injunction which Aurora opposes. After carefully considering the parties' submissions, applicable legal authorities, and all pertinent matters of record, the Court **denies** Plaintiffs' Motion.

## I.   FACTUAL BACKGROUND

Plaintiffs filed this lawsuit alleging that Defendant wrongfully foreclosed on a house Plaintiffs' claim to own and immediately sought a temporary restraining order preventing Defendant from taking possession of the foreclosed house.[3] The record shows that Angela Santarose obtained a purchase money loan from Lehman Brothers Bank, FSB, A Federal Savings Bank ("Lehman Bank"). Santarose executed a promissory note ("the Note") dated March 23, 2007, for the principal amount of $226,497.00 in return for the loan from Lehman Bank.[4] Angela and Frank Santarose executed and delivered to Thomas Black, Jr., as Trustee, a deed of trust ("Deed of Trust") dated March 23, 2007, securing the payment of the Note.[5] The Deed of Trust

---

[3]   It is difficult to discern precisely what Plaintiffs *pro se* seek through this Motion as Plaintiffs' house was foreclosed upon before Plaintiffs filed the instant suit. It appears that Plaintiffs seek to prevent Aurora from taking possession of the disputed property, in addition to disputing the validity of the foreclosure. The Court endeavors to address each of Plaintiffs' contentions.

[4]   Note, Exh. 2 to Aurora's Motion ("Note") [Doc. # 20-2], at 3-5 of 56.

[5]   Deed of Trust, Exh. 2 to Aurora's Motion ("Deed of Trust") [Doc. # 20-2], at 6-21 of 56.

lists Lehman Bank as the "Lender."[6] The Deed of Trust also references the Mortgage Electronic Registration Systems, Inc. ("MERS"), and provides that "MERS" is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. MERS is a beneficiary under this Security Instrument."[7] The Deed of Trust further provides that:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the [Real Property]; and to take any action required of Lender. . . .[8]

Lehman Bank changed its name to Aurora on April 27, 2009.[9] Aurora, formerly known as Lehman Bank, has been the sole owner of the Note and Deed of Trust since the inception of the loan.[10]

Aurora contends that Angela Santarose defaulted on the Note and Deed of Trust by failing to pay the monthly principal and interest payment due for November 1,

---

[6] *Id.* at 6 of 21.

[7] *Id.* at 7 of 56.

[8] *Id.* at 9 of 56.

[9] *See* Affidavit of Christopher Zimmerman, Exh. 2 to Aurora's Motion ("Zimmerman Affidavit") [Doc. # 20-2], at 2 of 56.

[10] *Id.*

2008, and for all months thereafter.[11] Consequently, Aurora as beneficiary under the Deed of Trust authorized foreclosure of the property in issue "by, through, and in the name of its nominee," MERS.[12] MERS foreclosed the property on March 2, 2010.[13] On March 5, 2010, Frank Santarose filed this suit. On March 11, 2010, Santarose filed the instant Motion seeking preliminary injunctive relief. The Court denies Plaintiffs' Motion.[14]

## II. STANDARD FOR PRELIMINARY INJUNCTION

A plaintiff seeking a temporary restraining order or a preliminary injunction must show the following four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that it will suffer irreparable injury absent the injunction; (3) that the threatened injury outweighs any harm the injunction might cause the defendants; and (4) that the injunction will not impair the public interest. *Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439, 442 (5th Cir. 2000) (citing *Sugar Busters, L.L.C. v. Brennan*, 177 F.3d 258, 265 (5th Cir. 1999)). The Fifth

---

[11] *Id.*

[12] Zimmerman Affidavit, at 2.

[13] *Id.*; Substitute Trustee's Deed [Doc. # 20-3], at 3-4.

[14] At the April 14, 2010, the Court secured Aurora's agreement that it would not attempt to take possession of the disputed property until the Court had ruled on pending motions. Hearing Minutes and Order [Doc. # 12]. Aurora is now released from that agreement.

Circuit has cautioned "that a preliminary injunction is 'an extraordinary remedy' which should only be granted if the party seeking the injunction has 'clearly carried the burden of persuasion' on all four requirements." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003) (citing *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir.1985)).

### III. ANALYSIS

#### A. Substantial Likelihood of Success on the Merits

Aurora has produced evidence that it is the owner of the Note and Deed of Trust,[15] and that Angela Santarose defaulted on same and owed a principal balance of $262,240.32, as of December 14, 2009, with interest continuing to accrue on the Note at a rate of 10.575 percent per annum.[16] Plaintiffs counter with three theories of why Plaintiffs are nonetheless entitled to a temporary restraining order. First, Plaintiffs argue that they paid off the debt through an instrument they refer to as a "bill of exchange." Second, Plaintiffs argue that Aurora does not own or possess the Note and

---

[15] Zimmerman Affidavit, at 2 of 56; Note, at 3-5 of 56; Deed of Trust, at 6-21 of 56. In addition to attaching photocopies of the Note and Deed of Trust to the Zimmerman Affidavit, Aurora also produced the original Note in open court at the May 14, 2010, hearing.

[16] Zimmerman Affidavit, at 2 of 56; Loan Records, Exh. 2 to Aurora's Motion [Doc. # 20-2], at 33 of 56.

Deed of Trust in issue.  Finally, Plaintiffs contend that MERS did not have standing to foreclose on the property.  The Court addresses each of Plaintiffs' contentions in turn.

### 1.     The Bill of Exchange

Plaintiffs argue that they paid the balance on the Note by tendering a "bill of exchange" or an "international bill of exchange" to Aurora.  In an affidavit attached to his original complaint, Frank Santarose stated that he "discharged this alleged public debt on October 19, 2009, by submitting a bill of exchange to Aurora Bank FSB, drawn upon an authorized officer of the United States (in this case the Secretary of Treasury)."[17]  In support, Plaintiff attached to his original complaint a document titled "Bill of Exchange."[18]  The upper lefthand portion of the document lists the name and address of a "Ronald George Ottaviano."[19]  The document is addressed to the "Secretary of the Treasury, Department of the Treasury Bank — Ledger # 00000032."[20]  The document is not signed.[21]  Plaintiff later submitted as an additional

---

[17]   Affidavit of Plaintiff, Complaint for Injunctive and Declaratory Relief [Doc. # 1-1].

[18]   Bill of Exchange, Exh. 2 to Complaint for Injunctive and Declaratory Relief [Doc. # 1-2].

[19]   *Id.*

[20]   *Id.*

[21]   *Id.*

exhibit a document titled "International Bill of Exchange."[22]  This document contains the words "Offer of Performance UCC 3-103(6)" and "Tender Made Pursuant to UCC 3-603" in the top, center portion of the "bill."  The document states that "Aurora Loan Services" is to be paid $224,777.59 "on sight," but does not identify a payor.[23]  In the bottom lefthand portion of the document, below the words "For Value Received And Charge the Same to Account of," appears the name "Ronald George Ottaviano,"[24] followed by the purported signature of Ottaviano.

Plaintiffs have also produced the "Affidavit of Ronald George Ottaviano" ("Affidavit"), dated April 19, 2010.[25]  Ottaviano avers that he "tendered the bill of exchange to Aurora Bank for the discharge of a mortgage for the benefit of Frank Santarose and Angela Santarose," and that he, Ottaviano, is "authorized by Congress as part of a National Banking Association to tender such negotiable instruments."[26]  Ottaviano further states that he has in place with the United States Treasury, (1) an Indemnity Bond in the amount of $300 million, (2) a $50 million "off-set bond," (3)

---

[22]  International Bill of Exchange [Doc. # 6].

[23]  *Id.*

[24]  *Id.*

[25]  Affidavit of Ronald George Ottaviano ("Ottaviano Affidavit") [Doc. # 14].

[26]  *Id.* at 1.

a "UCC Contract Trust Account Number," and (4) a "Security Agreement."[27] These statements appear fantastical, are inconsistent with well established banking practices, and do not establish bank accounts or other sources of funds recognized by federal or state law. Ottaviano makes other incomprehensible statements in the Affidavit, including that "the bill of exchange spoken of above is an obligation of the United States and therefore we the people have the right to draw down that obligation and discharge said obligation."[28]

At the April 14, 2010, hearing, Frank Santarose stated that a bill of exchange is a request for payment from a trust held in the United States Treasury. At the same hearing, Frank Santarose stated his belief that every person born in the United States of America has a trust set up in their name at the time of their birth, and that he (Santarose) drew upon his trust with the bill of exchange. In sum, it appears to be the Santaroses' theory that through a purported device called a "bill of exchange," they directed the Secretary of Treasury to draw upon federal funds to pay off the Santaroses' obligations to Aurora under the Note and Deed of Trust and, further, that the Secretary of the Treasury actually did so.

---

[27] *Id.* at 1.

[28] *Id.* at 2.

The Court rejects the Santaroses' contentions. Plaintiffs have provided no viable legal authority or any reliable or probative factual support to buttress their dubious bill of exchange theory. There is no evidence—let alone authenticated proof—that the United States Department of Treasury, or the National Banking Association, have any trust or account in the Santaroses' name, or recognize any of the obligations to which Ottaviano or the Santaroses refer. *See United States v. Alexander*, 2010 WL 16443425, at *4-*6 (D.S.C. Apr. 22, 2010) (rejecting as frivolous a defendant's theory of tax avoidance based of taking "control of one's so-called Treasury Direct Account in Washington" and "redemption via one's straw man") (citing *U.S. v. Kahn*, 2004 WL 1089116, at *1 (M.D. Fla. Mar. 30, 2004) (classifying as "abusive" tax schemes that included "outlandish machinations" such as "counterfeit checks and bonds purporting to draw on fictitious accounts held by the Treasury in the customer's name" and "false UCC financing statements and related documents purporting to create a security interest in favor of the customer in the customer's own name, birth certificate, property, and even the customer's own person").

Moreover, Plaintiffs have produced no evidence that the Secretary of the Treasury, or any federal official, ever made payment to Aurora on behalf of the Santatroses by drawing upon federal funds, or any other funds, to make any payment

to Aurora on behalf of the Santaroses. Finally, there is simply no admissible evidence that Aurora received any payment on Mrs. Santarose's obligations regarding the property in issue. Each Plaintiff, significantly, conceded in open court that neither he nor she has personally paid off Mrs. Santarose's obligation to Aurora. Plaintiffs accordingly have failed to show a substantial likelihood that they will succeed in showing that they have satisfied their obligations to Aurora under the Note and Deed of Trust.

### 2. Ownership and Possession of the Note

Plaintiffs next contend that Aurora does not own or possess the Note in issue; that the Note was "monetized and traded as a security"; and that the Deed of Trust is a contract between the Santaroses only, to which Aurora is not a party and holds no interest.[29]

Plaintiffs offer no evidence for their speculation that Aurora does not own the Note. Indeed, the uncontradicted evidence in the record shows that Aurora does own (and possesses) the Note. The Note lists Lehman Bank, Aurora's predecessor in interest, as the "Lender," and defines "Note Holder" as "The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note.

---

[29] *See, e.g.*, Reply, at 1.

. . ."[30]  Aurora produced the original Note in open Court and has also produced the affidavit of its representative stating Aurora/Lehman has been the sole owner of the Note since inception of the loan.[31]  Plaintiffs have failed to establish that Aurora is not owner of the Note.

Plaintiffs also contend that the Deed of Trust is merely a contract between themselves to which Aurora is not a party.  The Court rejects this contention.  There is no legally cognizable theory or reliable evidence that Aurora did not originally have, or no longer has, a legally enforceable interest in the Deed of Trust.  The Deed of Trust lists Lehman Bank, Aurora's predecessor, as the "Lender" and further provides that the term "Lender" under that instrument "includes any holder of the Note who is entitled to receive payments under the Note."[32]  The Deed of Trust defines "Borrower" as "Angela Santarose, a married woman, and Frank Santarose, her husband," and recites numerous covenants between the Borrower and the Lender.[33]

---

[30] Note, at

[31] Zimmerman Affidavit, at 2 of 56; Aurora also attached a photocopy of the Note to the Zimmerman Affidavit.  *See* Note, at 3-5 of 56.

[32] Deed of Trust, at 6-7 of 56.

[33] *Id.*, at 9-21 of 56.

"Borrower" is listed as the "grantor under this Security Instrument."[34] The Deed of Trust further provides that:

> This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower *irrevocably* grants and conveys to Trustee, in trust, with power of sale, the following described property . . . .[35]

Finally, just above the Plaintiffs' signatures, the Deed of Trust provides: "BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it."[36] It is clear, therefore, that Aurora, as successor in interest to Lehman Bank, has a legally enforceable interest as "Lender" under the Deed of Trust.

Plaintiffs also point to a document entitled "Addendum to the Deed of Trust" ("Addendum") dated April 20, 2010.[37] The Addendum recites that it is a contract between Frank and Angela Santarose and is signed by those individuals only. The Addendum recites that it is an addendum to the Deed of Trust executed March 23, 2007, which "was to acknowledge [Lehman Bank] as the lender on the mortgage for

---

[34] *Id.* at 6 of 56.

[35] *Id.* (emphasis added).

[36] *Id.* at 21 of 56 (emphasis in the original).

[37] Addendum to the Deed of Trust [Doc. # 13].

the [property in issue]."[38]  The Addendum further provides that the mortgage was "funded" by the Note, and that the Santaroses thus "owned" the property with the mortgage having been "discharged."[39]  The Addendum purports to terminate the services of the trustee named in the Deed of Trust, substitute a new trustee, and exchange the property to the "Lone Star Holding Trust Co." with Thomas Budziszewski and Ottaviano as trustees.[40]

The Addendum was executed by the Santaroses *after* foreclosure of the property and the filing of this suit.  The Addendum has no legal effect.  It was not agreed to or signed by any Lehman or Aurora representative and therefore is not binding on Aurora.  Nothing in the Deed of Trust empowers Plaintiffs to unilaterally substitute a new individual or entity as trustee or make any other changes to that instrument.  Plaintiffs cite no authority, and the Court is unaware of any, that would allow the grantor of an irrevocable security interest to unilaterally modify the security instrument.  Finally, Plaintiffs' contention that the Note somehow "funded" the mortgage and "discharged" Plaintiffs' obligations to Aurora is nonsensical and without any legal foundation.  Plaintiffs have accordingly failed to establish a

---

[38]     *Id.*

[39]     *Id.*

[40]     *Id.*

substantial likelihood that they will succeed in showing that Aurora does not own or possess the Note, or that Aurora lacks an enforceable interest in the Deed of Trust.

### 3. MERS Standing to Foreclose

Last, Plaintiffs argue that MERS does not have standing to foreclose because it is not a "real party in interest." As set forth above, the Deed of Trust lists MERS as a nominee of the lender and as a beneficiary under that security instrument.[41] The Deed of Trust expressly provides that "MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests [granted by to Lender by Borrower], including, but not limited to, the right to foreclose and sell the [Real Property]."[42] The uncontradicted evidence establishes that Aurora "authorized foreclosure of the subject property by, through, and in the name of its nominee, [MERS], as provided in the Deed of Trust."[43] By the plain language of the Deed of Trust, MERS had the right to foreclose the property. Plaintiffs have failed to establish a substantial likelihood that they will succeed on their theory that MERS

---

[41] Deed of Trust, at 7 of 56.

[42] *Id.* at 9 of 56.

[43] Zimmerman Affidavit, at 2.

did not have standing to foreclose on their property as provided for by the Deed of Trust.[44]

Plaintiffs have not met their burden to establish a substantial likelihood of success on the merits for any of their theories of relief in this case, and have thus failed to meet the first requirement for showing entitlement to a temporary restraining order or a preliminary injunction. *See Enrique Bernat F.,* 210 F.3d at 442.

### B. Substantial Threat of Irreparable Injury

Even if Plaintiffs had established a substantial likelihood of success on the merits, they nevertheless fail to show entitlement to a preliminary injunctive relief because they have not demonstrated a substantial threat of irreparable injury. *See id.* Aurora has the ability to pay any monetary damages to which Plaintiffs may show themselves entitled. It was established without contradiction at the May 14, 2010

---

[44] Plaintiffs cite to several decisions from other jurisdictions for the proposition that MERS lacks standing to foreclose in this case. *See* Reply, at 2-4 (citing, *e.g.*, *Landmark Nat'l Bank v. Kesler*, 192 P.3d 177 (Kan. Ct. App. 2008) (holding that MERS was not a necessary party to a foreclosure suit because it was merely akin to an agent to the lender), *aff'd*, 216 P.3d 158 (2009); *Saxon Mortgage Svs. v. Hillery*, 2008 WL 5170180 (N.D. Cal. Dec. 9, 2008) (holding that MERS' assignment of a deed of trust and promissory note was invalid because there was no evidence that MERS possessed the note or had authority to transfer it)). None of the cited decisions establish that MERS lacked standing to effect a non-judicial foreclose when provided such right as nominee in the deed of trust and authorized by the nominating lender. Plaintiff's reliance on these authorities therefore is unavailing. *Accord*, *Sawyer v. Mortgage Electronic Registration Sys., Inc.*, 2010 WL 996768, at *3 (N.D. Tex. Feb. 1, 2010) (rejecting argument that MERS did not have standing to foreclose because it was not the holder of the note and deed of trust).

hearing that, prior to the foreclosure, the Santaroses entered into a contract to sell the property but defaulted when the foreclosure occurred. Plaintiffs explained that currently they are renting the property, which is located in Galveston, Texas, to short-term tenants. Thus, by their own admissions, Plaintiffs do not reside at the property and are merely using it for income. There is no substantial threat of irreparable injury in the absence of preliminary injunctive relief.[45]

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for a Temporary Restraining Order [Doc. # 5] and other preliminary injunctive relief is **DENIED**.

SIGNED at Houston, Texas, this **2nd** day of **June, 2010**.

_____
Nancy F. Atlas
United States District Judge

---

[45] The Court need not reach the final two elements of the temporary restraining order standard; *i.e.*, that the threatened injury outweighs any harm the injunction might cause the defendants and that the injunction will not impair the public interest. *See Karaha Bodas Co.*, 335 F.3d at 363 (plaintiff must establish all four elements to demonstrate entitlement to temporary restraining order). However, it is noted that given Plaintiffs' failure to demonstrate either that they satisfied their obligations under the Note and Deed of Trust, or that they are faced with a substantial threat of irreparable injury, it is likely that they would also fail to establish the third and fourth requirements. *See. e.g.*, *Enrique Bernat F.,* 210 F.3d at 442.